Eric W. Pearson (7276)
Jonathan R. Clark (12470)
**PEARSON LAW, P.C.**
10421 S. Jordan Gateway, Suite 600
Salt Lake City, Utah 84095
Telephone: (801) 519-0300
Facsimile: (801) 519-0400
Email: ewp@pearsonfirm.com
Email: jrc@pearsonfirm.com

*Counsel for American Institutional Partners, LLC and Mark H. Robbins*

-and-

John D. McLaughlin, Jr. (admitted *pro hac vice*)
**CIARDI CIARDI & ASTIN**
919 N. Market Street, Suite 700
Wilmington, Delaware 19801
Telephone: (302) 658-1100
Facsimile: (302) 658-1300
Email: jmclaughlin@ciardilaw.com

*Counsel for American Institutional Partners, LLC*

---

### IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

| | |
|---|---|
| In re: AIP RESORT DEVELOPMENT, LLC,<br><br>Debtor. | **Bankruptcy No. 10-25027 JTM**<br><br>Honorable Joel T. Marker<br><br>**OBJECTION TO TRUSTEE'S APPLICATION TO EMPLOY PARSONS KINGHORN HARRIS**<br><br>(VIA ECF) |

American Institutional Partners, LLC, a Delaware limited liability company ("AIP"), by and through its undersigned counsel Pearson Law, P.C. and Ciardi Ciardi & Astin, and Mark H. Robbins ("Mr. Robbins"), through his counsel Pearson Law, P.C., hereby file this objection (the "Objection") to the Trustee's Application to Employ Attorneys and Declaration of Proposed Attorney [Docket No. 237] (the "Application"). In support of this Objection, AIP and Mr. Robbins state as follows:

## BACKGROUND

1.      On April 19, 2010 (the "Petition Date"), AD Capital, LLC ("AD Capital") together with Lockhart & Munroe ("Lockhart," and together with AD Capital, "Petitioning Creditors"), filed an involuntary petition under Chapter 11 of the Bankruptcy Code (the "Involuntary Petition") [Docket No. 1], against AIP Resort Development, LLC ("AIP RD" or the "Debtor") alleging that both AD Capital and Lockhart were creditors of AIP RD.

2.      On June 8, 2010, the Court entered an order for relief by default against AIP RD.  *See* June 4, 2010, Ex Parte *Motion for Entry of Default and Entry of Order for Relief*, filed by AD Capital and Lockhart [Docket No. 12] and June 8, 2010 *Order for Relief Under Chapter 11* [Docket No. 18] (the "Order for Relief").

3.      After learning of the Involuntary Petition in this case, AIP formally appeared in the bankruptcy case on Tuesday, September 28, 2010 with its filing of the *Motion of American Institutional Partners, LLC, As Controlling Member of AIP Resort Development, LLC, (1) For an Order Enforcing Automatic Stay; (2) Contesting Assertion of Control of Debtor by Fairstar Resources, Ltd.* [Docket No. 41].

4.      By order dated October 1, 2010, Mr. Robbins was designated by this Court pursuant to Fed. R. Bankr. Pro. 9001(5)(A) "as the corporate representative of and responsible person for the Debtor in this Chapter 11 case.  Order at ¶ 2 [Docket No. 53].

5.      Fairstar, a non-creditor who was actively involved in the bankruptcy case, filed the *Motion of Fairstar Resources, Ltd. To Appoint Chapter 11 Trustee Pursuant To 11 U.S.C. §1104(a)*, on November 24, 2010 [Docket No. 82] (the "Motion to Appoint Trustee"), and a hearing was set for the Motion to Appoint Trustee for January 25, 2011.

The Court, however, ordered from the bench on January 3, 2011, that a trustee be appointed and Fairstar's Motion to Appoint Trustee would not need to go forward.  *See* January 11, 2011 order [Docket No. 132].  David L. Miller, Esq. (the "Trustee") was appointed Chapter 11 trustee on January 21, 2011.  *See* January 21, 2011 order [Docket No. 155].

6.      On January 24, 2011, the Trustee filed the *Trustee's Motion to Convert Case to One Under Chapter 7 of the Bankruptcy Code* [Docket No. 158] (the "Motion to Convert").

7.      On March 14, 2011, this case was converted from a case under Chapter 11 of the Bankruptcy Code to one under Chapter 7 of the Bankruptcy Code.  Subsequently, the Trustee was appointed Chapter 7 Trustee of the Debtor's bankruptcy estate.

8.      On March 17, 2011, the Trustee filed an application to employ himself as attorney for the Debtor's estate (the "Miller Employment Application") [Docket No. 209].  The Miller Employment Application was granted by Order of this Court dated March 28, 2011 [Docket No. 217].

9.      On March 25, 2011, the Debtor filed a *Notice of Appeal* [Docket No. 214] of the Order granting the Motion to Convert.

10.     On April 11, 2011, the Trustee filed the Application.  The Application seeks to appoint George Hoffman and the law firm Parsons Kinghorn Harris, P.C. ("PKH") as his counsel pursuant to Section 327(a) of the Bankruptcy Code.

11.     As noted in the Declaration of George Hoffman (the "Hoffman Declaration") attached to the Application, PKH was contacted regarding representing the Debtor.  *See* Hoffman Declaration, at ¶ 5 ("My colleague Matthew M. Boley was

3

previously contacted by the Debtor regarding Parsons Kinghorn Harris' potential interest in representing the Debtor. The Debtor did not hire Matthew M. Boley or Parsons Kinghorn Harris. Matthew M. Boley and Parsons Kinghorn Harris did not provide the Debtor with legal advice. Matthew M. Boley and Parsons Kinghorn Harris never represented the Debtor.").   The Hoffman Declaration, however, is vague, at best, regarding the full scope and nature of that contact.

12.   In light of the substantial concerns of AIP and Mr. Robbins regarding the retention of PKH, the filing of the following objection was deemed necessary.

### DEBTOR'S CONTACT WITH PKH

#### A.   Attorney Kittila Speaks With PKH Attorney Boley

13.   October 11, 2010—ten days after Mr. Robbins was appointed corporate representative and responsible person for the Debtor—PKH attorney Matthew M. Boley, Esq., was contacted by Theodore A. Kittila, counsel for Mr. Robbins and AIP.   The discussion between Mr. Boley and Mr. Kittila concerned the representation of the Debtor *in this bankruptcy case*.   *See* Affidavit of Theodore A. Kittila at ¶¶ 5-6 (the "Kittila Affidavit"), attached hereto as Exhibit A.

14.   As detailed in the Kittila Affidavit, the discussion included the possibility of forming a client-lawyer relationship.   In that regard, Mr. Kittila shared with PKH the background of the Debtor's bankruptcy case, AIP's and Mr. Robbins' ongoing concerns regarding the representation, and the strategy AIP and Mr. Robbins wished to pursue moving forward.   *Id.* at ¶ 6.   Included in this conversation was confidential information. *Id.* at ¶ 14.

15.     In response, Mr. Boley discussed the representation and the strategy, and offered some advice and guidance that allayed AIP's and Mr. Robbins' concerns. *Id..* at ¶¶ 6, 14. Altogether, the call lasted 30 minutes, and Mr. Kittila shared a number of details concerning the relationships between the parties. *Id.* at ¶ 7.

16.     The cost of retaining PKH was also discussed. Mr. Boley requested a retainer of $100,000 for PKH to represent Mr. Robbins in this bankruptcy case. *Id.* at ¶ 7.

17.     Impressed with his conversation with Mr. Boley, including the advice given by Mr. Boley, Mr. Kittila sent PKH a comprehensive list of parties so that a conflict check would be run. *Id.* at ¶¶ 7-8. After the call, Mr. Kittila recommended that Mr. Boley and PKH be retained; however, the cost of retaining PKH was viewed as too high. *Id.* at ¶ 8.

18.     AIP RD ultimately retained Anna W. Drake, Esq., of Salt Lake City, Utah, and AIP and Mr. Robbins have been working collectively with Ms. Drake throughout the course of this bankruptcy case to challenge what Mr. Robbins and AIP believed was an improper bankruptcy case. *Id.*

## B.     The Trustee Seeks to Retain PKH

19.     The Trustee has sought to retain PKH as his counsel. After receiving notice, Mr. Kittila contacted Steven Strong, Esq. of PKH on April 13, 2011, and advised Mr. Strong that he (Mr. Kittila) had contacted his partner Mr. Boley regarding representing the Debtor, that Mr. Kittila had spent some time with Mr. Boley discussing the background of the matter and its complications, and that Mr. Kittila had recommended Mr. Boley's and PKH's retention as Debtor's counsel. *Id.* at ¶ 9.

20.     Mr. Strong advised Mr. Kittila that PKH was aware of Mr. Kittila's telephone meeting with Mr. Boley. *Id.* at ¶ 10.   After Mr. Kittila noted that he had serious concerns about PKH serving as counsel for the Trustee given the fact that the Trustee held a position adverse to AIP in light of the pending appeal, Mr. Strong advised that he would discuss the matter further with his partners. *Id.*

21.     On April 14, 2011, Mr. Kittila wrote a letter to PKH and specifically objected to the Trustee's retention of PKH. *Id.* at 11.   A copy of this letter is attached to the Kittila Affidavit as Exhibit 1.

22.     Shortly after sending the letter, Mr. Kittila received a phone call from George Hofmann, Esq., Mr. Strong, and Mr. Boley of PKH. *Id.* at ¶ 12.   During the call, Mr. Kittila expressed his reservations regarding the proposed retention. *Id.*   Mr. Boley advised that he remembered certain aspects of the earlier discussion, and shared with the group what he remembered of that conversation. *Id.*   At that point, Mr. Boley offered to have an ethical wall put into place to prevent disclosure of confidential information. *Id.* Mr. Kittila advised that he would need to consider this proposal further to determine whether this would be satisfactory, but that barring this, he would need to oppose PKH's retention. *Id.*

23.     After the phone call with Messrs. Strong, Hofmann, and Boley and after considering the matter further, it was determined that AIP and Mr. Robbins needed to oppose retention of PKH.   Mr. Kittila emailed Mr. Boley thereafter and advised him of the same. *Id.* at ¶ 13.   Because PKH's bankruptcy team is comprised of only three attorneys, Mr. Kittila was tremendously concerned that confidential information regarding his clients was shared or could be shared with other attorneys in PKH—even if

such sharing is unintentional.  *Id.* at ¶ 17.  If such information were shared, this would potentially aid PKH and its attorneys in its representation of the Trustee against AIP and Mr. Robbins.  *Id.*

## LEGAL ARGUMENT

The Application should be denied for two reasons.  First, PKH's representation of the Trustee violates Utah Rule of Professional Conduct ("U.R.P.C.") 1.18(c), which provides that "[a] lawyer … shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter."  PKH received confidential information from Mr. Robbins concerning his and the Debtor's interests and strategy in this bankruptcy, information which could be significantly harmful if used by the Trustee against the Debtor, AIP, and/or Mr. Robbins.  Second, the Trustee already has counsel and the appointment of PKH as additional counsel is unnecessary, duplicative, and does not benefit the Debtor's estate.

A.      **The Utah Rules of Professional Conduct Prohibit PKH's Representation**

Section 327(a) of the Bankruptcy Code provides:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional, persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Moreover, "the bankruptcy court has an affirmative duty to exercise vigilance in avoiding impermissible conflicts of interest on the part of court-appointed professionals." *Rome v. Braunstein*, 19 F.3d 54, 59 (1st Cir. 1994).

Due to the October 11, 2010 phone call between Mr. Kittila and Mr. Boley, duties

arose between PKH and AIP Resort and Mark H. Robbins under U.R.P.C. 1.18.

U.R.P.C. 1.18 states:

> Duties to Prospective Clients.
>
> (a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.
>
> (c) **A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter**, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
>
> (d) When a lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
>
> (1) both the affected client and the prospective client have given informed consent, confirmed in writing, or;
>
> (2) the lawyer who received the information took reasonable measure to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
>
> (d)(2)(i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>
> (d)(2)(ii) written notice is promptly given to the prospective client.

U.R.P.C. 1.18 (Duties to Prospective Client) (emphasis added).

In October 2010, AIP RD was a debtor-in-possession and was working together

with its manager AIP and AIP RD's court appointed representative Mark Robbins to

locate separate debtor's counsel for AIP RD.  Therefore, when Mr. Kittila contacted Mr.

Boley, he was doing so as a representative of AIP RD, AIP, and Mr. Robbins.  Thus, Mr.

Kittila's contact with Mr. Boley fits squarely within the definition of "prospective client"

communications.  Comment 3 to Rule 1.18 explains:

> It is often necessary for a prospective client to reveal
> information to the lawyer during an initial consultation
> prior to the decision about formation of a client-lawyer
> relationship. The lawyer often must learn such information
> to determine whether there is a conflict of interest with an
> existing client and whether the matter is one that the lawyer
> is willing to undertake. Paragraph (b) prohibits the lawyer
> from using or revealing that information, except as
> permitted by Rule 1.9, even if the client or lawyer decides
> not to proceed with the representation. The duty exists
> regardless of how brief the initial conference may be.

AIP RD (as debtor-in-possession), AIP, and Robbins reasonably had an expectation of

confidentiality from PKH.  *See Artificial Nail Techs., Inc. v. Flowering Scents, LLC,*

2006 WL 2252237, at *2 (D. Utah Aug. 4, 2006) ("Even assuming an attorney-client

relationship had not arisen, duties arose between [law firm] and Plaintiffs under U.R.P.C.

1. 18.").

The information PKH received could significantly harm AIP, Mr. Robbins, and

the Debtor.  The Trustee has taken a position directly adverse to all three parties.  Both

AIP and AIP RD are currently working on an appeal of the order granting the Trustee's

motion to convert this bankruptcy case to a case under Chapter 7 of the Bankruptcy Code.

Furthermore, Mr. Robbins has maintained that the liquidation of the bankruptcy estate is

entirely inappropriate, given the substantial concerns that Mr. Robbins has raised about

the merits of the petitioning creditors' "claims."   AIP and AIP RD are vigorously pursuing this appeal.  *See* Kittila Declaration at ¶ 15.

The prohibition in Rule 1.18 is imputed to all PKH lawyers, per U.R.P.C. 1.10, as there as been no consent from AIP RD or Mr. Robbins and it is unclear that screening will be effective here, where Mr. Boley has relayed confidential information to PKH's bankruptcy attorneys..  *See* U.R.P.C. 1.18, cmt. 7 ("Under paragraph (c), the prohibition in this Rule is imputed to other lawyers as provided in Rule 1.10, but, under paragraph (d)(1), imputation may be avoided if the lawyer obtains the informed consent, confirmed in writing, of both the prospective and affected clients. In the alternative, imputation may be avoided if the conditions of paragraph (d)(2) are met and all disqualified lawyers are timely screened and written notice is promptly given to the prospective client."); Kittila Declaration at ¶ 12 ("Mr. Boley advised that he remembered certain aspects of the earlier discussion, and shared with the group what he remembered of that conversation.").

The violation of Rule 1.18 cannot be reconciled with the provision of the bankruptcy code.  *See Hansen, Jones & Leta, P.C. v. Segal*, 220 B.R. 434, 454-55 (D. Utah 1998) (ethical "duties to the client are the same for bankruptcy practitioners as well as nonbankruptcy practitioners… There is no provision in the Bankruptcy Code which excepts an attorney from his/her ethical responsibilities under the Model Rules"); *In re Roberts*, 46 B.R. 815, 832 (Bankr. D. Utah 1985), *aff'd in part, rev'd in part*, 75 B.R. 402 (D. Utah 1987) (attorneys practicing before the bankruptcy court are "held to the same ethical standards as are other counsel."); *In re Consupak, Inc.*, 87 B.R. 529, 549-50 (Bankr. N.D. Ill. 1988) (noting that Code of Professional Responsibility and Model Rules provide substantial guidance to courts in evaluating conduct of counsel for the trustee); *In*

*re Doors and More Inc.*, 126 B.R. 43, 44-45 (Bankr. E.D. Mich. 1991) (finding restrictions on counsel for debtor-in-possession include (1) no adverse interest and must be disinterested; (2) retention subject to court's approval; and (3) code of professional conduct); *In re Kendavis Industries Int'l, Inc.*, 91 B.R. 742, 753 (Bankr. N.D. Tex. 1988) (counsel "had a conflict of interest in representing the Debtors in these cases, whether under the ABA Code of Professional Responsibility, or under the Bankruptcy Code.").

In *Doors and More*, the Bankruptcy Court explained that a restriction "on the trustee's discretion in choosing counsel arises from the applicable code of professional conduct. Plainly, the Court will not approve the employment of counsel that does not comport with the applicable ethical and disciplinary regulations." 126 B.R. at 45 (citing *In re Drexel Burnham Lambert Group Inc.*, 112 B.R. 584, 586 (Bankr. S.D.N.Y. 1990)). "Indeed, the trustee's selection of counsel must be consistent with the high standards required of officers of the federal courts." *Id.* (citing *In re Codesco, Inc.*, 18 B.R. 997, 999 (Bankr. S.D.N.Y. 1982)).

Moreover, the Hoffman Declaration's disclosure of PKH's connection to the debtor is inadequate under Rule 2014 of the Federal Rules of Bankruptcy Procedure. Rule 2014(a) requires that an application set forth "*all* of person's connection to the debtor, creditors, and any other party in interest, their respective attorneys and accountants" to the best of the applicant's knowledge. *See* Fed. R. Bankr. Pro. 2014 (emphasis added). "Defective disclosure is not a minor matter. It goes to the heart of the integrity of the bankruptcy system...." *In re B.E .S. Concrete Prods., Inc.*, 93 B.R. 228, 236–38 (Bankr. E.D. Cal. 1988). PKH's representation to this Court concerning its connection with the Debtor leaves out the most important part of the contact—that the

Debtor disclosed to PKH confidential information concerning the Debtor's concerns and strategy going forward *in this bankruptcy case*.  As the First Circuit noted in *Rome* "[a]bsent the spontaneous, timely and complete disclosure required by section 327(a) and Fed.R.Bankr.P. 2014(a), court-appointed counsel proceed *at their own risk*."  19 F.3d at 59 (emphasis in original).

Taken together, PKH's violation of U.R.P.C. 1.18 and its failure to provide complete disclosure of its conflict with the Debtor, as required by Rule 2014, require that PKH's Application for employment in this case be denied.

**B.      PKH's Retention Is Not Necessary**

The application of PKH should also be denied because it is unnecessarily duplicative.  The Trustee already has counsel.  The Miller Employment Application sets for the broad scope of his engagement:

> David L. Miller will render the following professional services for the estate: Considering actions against debtors [sic] third parties, and to set aside conveyances and preferences, avoid liens, drafting and preparation of legal documents, including potential motions to employ professionals, sell property, for approval of sales, and related matters.

Miller Employment Application at ¶ 5.

The Application contains a similarly broad and overlapping reasons for employment of PKH, including:

> A.      The real and/or personal property of the Debtor may need to be administered and/or liquidated and the Trustee requires legal counsel to file the necessary pleadings and review and prepare documentation relating to the sale or administration of the real and/or personal property.

B.    The Trustee believes there may be avoidance actions which need to be investigated and if necessary adversary proceedings filed and prosecuted.

C.    The Trustee believes there may be claims for preferences which need to be investigated and if necessary adversary proceedings filed and prosecuted.

Application at ¶ 3.  The scope of PKH's proposed employment is thus equally as broad as David L. Miller's current engagement.  *Compare* Miller Employment Application at ¶ 5 *with* Application at ¶¶ 3-4.

It is unnecessary to have additional attorneys here where well-respected, competent and capable counsel has already been appointed.  *Cf. Matter of Singson*, 41 F.3d 316, 319 (7th Cir. 1994). (close supervision by Bankruptcy Court of the administration of an estate wards off "volunteers" attracted to "the kitty", and avoids duplication of effort).

With such broad and overlapping scopes of employment for both the Trustee's current counsel and his proposed counsel, the possibility of duplication in effort and multiplication of expense will almost certainly occur.  Indeed, absent from PKH's Application is any reference to the potential for duplication of effort.  Far from attempting to avoid duplication, the Application almost guarantees it.

The Application should therefore be denied.

## **CONCLUSION**

WHEREFORE, AIP and Mr. Robbins respectfully request this Court deny the

Application and granting such other and further relief as is just and proper.

Respectfully submitted,

Dated:  April 15, 2011
    Salt Lake City, Utah

   _/s/ Jonathan R. Clark_
Eric W. Pearson (7276)
Jonathan R. Clark (12470)
**PEARSON LAW, P.C.**
10421 S. Jordan Gateway, Suite 600
Salt Lake City, Utah 84095
Telephone:  (801) 519-0300
Facsimile:  (801) 519-0400
Email:  ewp@pearsonfirm.com
Email:  jrc@pearsonfirm.com

_Counsel for American Institutional_
_Partners, LLC and Mark H. Robbins_

-and-

John D. McLaughlin, Jr.
(admitted _pro hac vice_)
**CIARDI CIARDI & ASTIN**
919 N. Market Street, Suite 700
Wilmington, Delaware 19801
Telephone: (302) 658-1100
Facsimile: (302) 658-1300
Email: jmclaughlin@ciardilaw.com

_Counsel for American Institutional_
_Partners, LLC_

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **OBJECTION TO TRUSTEE'S APPLICATION TO EMPLOY PARSONS KINGHORN HARRIS** was filed electronically via the CM/ECF system with the Clerk of Court on April 15, 2011, which system sent electronic notification of such filing to the following:

| | |
|---|---|
| Michael R. Johnson | mjohnson@rqn.com,sglendening@rqn.com;docket@rqn.com |
| Douglas M. Monson | dmonson@rqn.com, tpahl@rqn.com;docket@rqn.com |
| Robert S. Prince | rprince@kmclaw.com, squilter@kmclaw.com |
| Shawn T. Richards | srichards@kmclaw.com |
| Peter J. Kuhn tr | Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov |
| United States Trustee | USTPRegion19.SK.ECF@usdoj.gov |
| David L. Miller | davidlmillerpc@msn.com |
| George B. Hofmann | gbh@pkhlawyers.com, dh@pkhlawyers.com |
| Michael D. Kendall | mdk@pkhlawyers.com |
| Steven C. Strong | scs@pkhlawyers.com |
| United States Trustee | USTPRegion19.SK.ECF@usdoj.gov |

I hereby certify that a true and correct copy of the foregoing **OBJECTION TO TRUSTEE'S APPLICATION TO EMPLOY PARSONS KINGHORN HARRIS** was served via US Mail, first-class, postage prepaid, on April 15, 2011 to the following:

**Durham Jones & Pinegar, P.C.**
Attn: Jeffrey M. Jones
Kenneth L. Cannon II
111 East Broadway, #900
P O Box 4050
Salt Lake City, UT 84110-4050

*/s/ Jonathan R. Clark*