John D. McLaughlin, Jr. (admitted *pro hac vice*)
**CIARDI CIARDI & ASTIN**
919 N. Market Street, Suite 700
Wilmington, Delaware 19801
Telephone: (302) 658-1100
Facsimile: (302) 658-1300
Email: jmclaughlin@ciardilaw.com

-and-

Eric W. Pearson (7276)
Jonathan R. Clark (12470)
**PEARSON LAW, P.C.**
10421 S. Jordan Gateway, Suite 600
Salt Lake City, Utah 84095
Telephone:  (801) 519-0300
Facsimile:  (801) 519-0400
Email:  ewp@pearsonfirm.com
Email:  jrc@pearsonfirm.com

*Attorneys for American Institutional Partners, LLC*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| In re:  AIP RESORT DEVELOPMENT, LLC,<br><br>Debtor. | **Bankruptcy No. 10-25027 JAB**<br><br>Honorable Joel T. Marker |
| --- | --- |

**OBJECTION OF AMERICAN INSTITUTIONAL PARTNERS, LLC
TO TRUSTEE'S MOTION TO (A) APPROVE BID PROCEDURES
AND BID PROTECTIONS FOR SALE OF SUBSTANTIALLY ALL OF
THE DEBTOR'S ASSETS, (B) AUTHORIZE THE SALE OF THE
DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,
AND INTERESTS, (C) PROHIBITING CREDIT  BIDS AT THE AUCTION;
AND (D) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES**

American Institutional Partners, LLC ("AIP"), by its undersigned counsel, hereby files

this objection (the "Objection") to the Trustee's *Motion to (a) Approve Bid Procedures and Bid*

*Protections for Sale of Substantially All of the Debtor's Assets, (b) Authorize the Sale of the*

*Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (d) Prohibiting*

*Credit Bids at the Auction; and (d) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 274] (the "Bid Procedures Motion"). In support of this Objection, AIP states as follows:

## PRELIMINARY STATEMENT

At a time when AIP's *Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. §§ 707(a) and 305(a)(1)* [Docket No. 260] and AIP and Debtor's appeal of the *Order Granting Trustee's Motion to Convert* [Docket No. 205] are both pending and the claims objections process has not even been initiated, the Trustee is proposing to sell substantially all of the assets of AIP Resort Development, LLC ("AIP RD" or the "Debtor"). However, in his zeal to sell Debtor's assets, the Trustee has filed a Bid Procedures Motion which not only does not comply with the minimum requirements of the "Bankruptcy Code" (11 U.S.C. § 101, *et seq.*), but appears to be designed to "stick it" to the parties that he is fighting with on the appeal.

Due to AIP's and Durham, Jones & Pinegar, P.C.'s ("DJP") secured claims against the Debtor, the Debtor's assets cannot be sold under section 363(f) of the Bankruptcy Code to the extent the purchase price does not exceed the face value of the liens. Nevertheless, the Trustee proposes a minimum bid that is less than 1 percent of the face value of AIP's and DJP's asserted liens. The Trustee obviously does not expect that the auction will result in a final sale amount of any consequence. Thankfully, the Bankruptcy Code protects secured creditors from such abuses.

Even if a sale is permitted, the proposed bid procedures are perplexing and unworkable. Apparently borrowing from a slew of other bid procedures motions which make no sense in this particular context, the Bid Procedures Motion is a hodgepodge of provisions that when read together do not maximize the value of the bankruptcy estate. The Trustee has:

(1)     failed to conduct any analysis regarding whether a sale of AIP RD's assets would provide a meaningful distribution to creditors—as Chapter 7 trustee's are typically required to do—and in fact appears to be proposing bid procedures that will get him "out of the hole";

(2)     failed to use due diligence in investigating the secured claims of AIP and DJP, going so far as to say he was unaware of DJP's security agreement even though the Trustee explicitly testified at the March 14, 2011, hearing on the motion to convert that he had seen the documents supporting DJP's secured claim;

(3)     proposed a minimum bid of $20,000 for the Debtor's assets, which will almost certainly fail to provide any return to any pre-petition creditor, secured or unsecured; and

(4)     proposed burdensome bid procedures which include: a break-up fee, despite the absence of a stalking horse bidder; the retention of an auctioneer without a retention agreement or parameters of the auctioneer's responsibilities; no marketing plan; the requirement of an asset purchase agreement; and critically, no credit bidding.

For all of the reasons herein, the Court is respectfully requested to deny the Bid Procedures Motion in its entirety.

## LEGAL ARGUMENT[1]

The bidding procedures contained in the Bid Procedures Motion cannot be approved, and in fact, demonstrate the Trustee's lack of business judgment concerning this bankruptcy estate. Although a bankruptcy court will generally defer to a trustee's business judgment, a trustee's decision will be scrutinized if it was made arbitrarily and capriciously. *See In re Curlew Valley Associates*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981). A trustee's decision cannot be

---

[1] AIP in no way concedes that the property of the Debtor should or can be sold. In fact, in light of the fact that the Bahamian government maintains strict requirements regarding the rights of parties to invest in Bahamian companies, and that such investment cannot be made without the approval of the Central Bank of the Bahamas, AIP asserts that any attempt to sell the interests in Hermitage could destroy the value of those interests. Regardless of this concern, the Trustee has said that he will attempt to sell those assets even if Bahamian law does not permit it. *See* Mar. 14 Hearing Tr. at 36:3-4 [Docket No. 236].

sustained when it does not involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." *Id.*

Here, much of what is motivating the Trustee is to get himself out of the "hole" that he is in with respect to his fees.  However, it is not the role of a trustee to administer an estate simply so that he gets paid.    Indeed, "the legislative history of the [Bankruptcy] Code made clear Congress' displeasure with prior practices under which trustees' administration of 'nominal asset cases' benefited only the trustees themselves."  6 *Collier on Bankruptcy* § 704.02[2] (rev. ed. 2010) (citing H.R. Rep. No. 595, 95h Cong., 1st Sess. 93 (1977)).  Other bankruptcy courts have noted that "[t]he mission of the Chapter 7 trustee is also to 'enhance the debtor's estate *for the benefit of unsecured creditors . . . .*'"  *In re Tobin*, 202 B.R. 339, 340 (Bankr. D.R.I. 1996) (citation omitted).  Thus, "the administration of assets by Chapter 7 trustees, where the property is clearly over-encumbered by valid liens, in no way comports with their obligation to enhance the estate for the benefit of unsecured creditors and to expeditiously close the estate." *Id.*

> A trustee may sell a debtor's property under 11 U.S.C. § 363, but generally only to benefit the unsecured creditors, i.e. when "the sale proceeds **will fully compensate secured lienholders and produce some equity for the benefit of the bankrupt's estate**." When, after a reasonable period of time for investigating the value of a debtor's property, it appears to the trustee that a sale of a debtor's property will yield no benefit to the estate, it is appropriate for the trustee to abandon the property on the ground that the property "is burdensome to the estate" or "of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). To attempt to sell estate property after it is apparent that no potential equity exists for the estate is "unnecessary" under Section 506(c).

*In re Williamson*, 94 B.R. 958, 962-63 (Bankr. S.D. Ohio 1988) (emphasis added). *See also Kimmel v. Crocker*, 72 F.2d 599, 601 (10th Cir. 1934) ("Bankruptcy courts should not administer properties incumbered by undisputed liens, unless there is a reasonable probability of there being a surplus over the incumbrances for the unsecured creditors."); *In re Feinstein Family*

*Partnership*, 247 B.R. 502, 507 (Bankr. M.D. Fla. 2000) ("It is now almost universally recognized that where the estate has no equity in a property, abandonment is virtually always appropriate because no unsecured creditor could benefit from the administration.").

Furthermore, the *Handbook for Chapter 7 Trustees* states:

> A trustee should ***only*** sell assets that will generate sufficient proceeds to ensure a distribution to unsecured creditors, priority or general. In evaluating whether an asset has equity, the trustee ***must determine*** whether there are valid liens against the asset and whether the value of the asset exceeds the liens. The trustee ***must also*** consider whether the cost of administration or tax consequences of any sale would significantly erode or exhaust the estate's equity interest in the asset. ***If the sale of an asset would result in little or no equity of the estate for the benefit of unsecured creditors, the trustee should abandon the asset.***

*Handbook for Chapter 7 Trustees*, U.S. Department of Justice at 8-17 (rev. ed. 2011) (emphasis added). Here, the Trustee should abandon the assets, especially in light of his express statement that he does not have the resources to administer this estate.

For the reasons stated below, the Bid Procedures Motion should be denied.

## I.     SECURED CREDITORS—SUCH AS AIP—ARE ENTITLED TO CREDIT BID.

Astonishingly, the Trustee's rationale for seeking to disallow AIP's and DJP's statutory right to credit bid is that he has not performed the minimum level of review necessary: "With respect to AIP, the Trustee does not believe that AIP filed a UCC-1 to perfect any security interest in the Debtor's assets. With respect to DJP, the Trustee is not aware of any written signed security agreement by which the Debtor purported to grant a security interest in favor of DJP." Bid Procedures Motion at ¶ 32. The Trustee is simply wrong on both counts. The Trustee conducted no inquiry in making his determination.

**A.      DJP And AIP Both Have Asserted That They Have Valid Security Interests.**

Turning first to the Trustee's argument as to DJP, AIP points out that the Trustee himself acknowledged the apparent validity DJP's claim—including the presence of a written guarantee—at the March 14, 2011 conversion hearing (the "Conversion Hearing").

> Q.      Mr. Miller, a couple of questions.  Have you had – have you reviewed the – the debt documents and security documents related to Durham, Jones & Pinegar as they relate to the debtor?
>
> A.      Yes.
>
> Q.      And have you had occasion to analyze those
>
> or determine whether you believe they have -- they appear to have a defect that you would pursue.
>
> A.      I didn't see any defect on its face … **And Durham, Jones & Pinegar appears to have properly perfected a UCC-1 with a guarantee connected to it for everything**, ….
>
> <div align="center">***</div>
>
> Q.      **Did the Debtor guarantee the obligations to Durham, Jones & Pinegar.**
>
> A.      **I believe so, yes.  I believe so.**

Mar. 14 Hearing Tr. at 39:10-40:7 (emphasis added).  Assuming the Trustee and his counsel had forgotten about this event, a simple phone call or email to DJP would have confirmed whether the Debtor had in fact granted a security interest to DJP.

As to AIP, again, the Trustee offers no explanation whatsoever for his unsupported conclusion that there is no perfected security interest.  First, it is irrelevant for purposes of validity whether a security interest is perfected.  A party can have a valid security interest without perfecting it.  Perfection only determines priority, not enforceability.  *See* 6 *Del. C.* § 9-203(b) (enforceability of security interest); Utah Code Ann. § 730A-9a-203(2) (same).  Second, the filing of a UCC-1 financing statement is not the only method to perfect a security interest,

and, in the case of AIP's lien, AIP's security interest is in fact perfected—by possession of the collateral, which is an original promissory note constituting an "instrument" under the Uniform Commercial Code. *See* 6 *Del. C.* 9-313(a) ("a secured party may perfect a security interest in tangible negotiable documents, goods, instruments, money, or tangible chattel paper by taking possession of the collateral"). *See also* Utah Code Ann. § 70A-9a-313(1). Accordingly, AIP has a perfected, enforceable security interest.

As with the DJP's claim, the Trustee, in his rush to sell AIP RD's assets, did not do even minimal due diligence to determine whether AIP has a valid, enforceable security interest in the Debtor. To the extent the Trustee had doubts as to the enforceability of AIP's security interest, a simple phone call to AIP's counsel would have removed all doubt.

**B.    AIP And DJP Have A Statutory Right To Credit Bid.**

The Bankruptcy Code provides AIP and DJP with a right to credit bid. Section 363(k) of the Bankruptcy Code states that where property is being sold under 363(b), with respect to the holder of a valid security interest, "unless the court for cause orders otherwise the holder of such claim may bid at sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property." 11 U.S.C. § 363(k). As the Third Circuit has explained:

> The practical rationale for credit bidding is that a secured lender would "not outbid [a] [b]idder unless [the] [l]ender believe[d] it could generate a greater return on [the collateral] than the return for [the] [l]ender represented by [the] [b]idder's offer."…Conversely, if a bidder believed that a secured lender was attempting to swoop in and take the collateral below market value and keep the upside for itself, that bidder presumably would make a bid exceeding the credit bid. In this manner, credit bidding is a method of ensuring to a secured lender proper valuation of its collateral at sale.

*In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 321 (3d Cir. 2010).

As demonstrated above, there is no "cause" for denying AIP's and DJP's statutory right to credit bid.  The Trustee cannot manufacture "cause" by ignoring factual and legal realities. The Trustee did not investigate the validity of AIP and DJP's security interests, and AIP and DJP must be allowed their statutory right to credit bid.

## II.     THE PROPOSED SALE DOES NOT SATISFY ANY OF THE REQUIRMENTS OF SECTION 363(f) OF THE BANKRUPTCY CODE.

The Trustee proposes to sell the assets under three mutually exclusive provisions of Section 363(f) of the Bankruptcy Code—subsections (f)(3), (f)(4) and (f)(5).  *See* Bid Procedures Motion at ¶¶ 30-37.  None of these subsections provides the Trustee the basis for the relief he seeks.  Accordingly, the Trustee cannot sell any of the Debtor's assets.

### A.     Section 363(f)(3) of the Bankruptcy Code.

The Trustee argues that the assets should be sold free and clear of any interest asserted by AIP and others pursuant to § 363(f)(3) of the Bankruptcy Code.  *See* Bid Procedures Motion at ¶¶ 36-37.   Section 363(f)(3) of the Bankruptcy Code allows the trustee to sell property of the estate free and clear of any interest if "such interest is a lien and the price at which such property to be sold is **greater than** the aggregate value of all liens on such property."  11 U.S.C. § 363(f)(3) (emphasis added).  The Trustee argues that "the market will dictate the value of the Assets at the Auction."   Bid Procedures Motion at ¶ 37.

However, as the Bankruptcy Code plainly provides, unless the auction produces bids **greater than** the face amount of the debts secured by the property, the requirements of Section 363(f)(3) are not satisfied.  The term "value" cannot be "economic value" or "market value" as the Trustee apparently advocates.  The logic behind this interpretation of the Bankruptcy Code's plain language is straightforward:  if "value" under Section 363(f) means "economic value" (*i.e.*,

what can be obtained in an open market), then a party could never obtain a value that is greater

than what is being paid.  Value can only mean "face value," not "economic value" or "market

value."  *See, e.g.*, *In re WDH Howell, LLC*, 298 B.R. 527, 532 (D.N.J. 2003) (stating that "value

in § 363(f) cannot mean economic value if it is read in the context of the preceding term 'greater

than'").  As the Ninth Circuit Bankruptcy Appellate Panel has explained:

> In any case in which the value of the property being sold is less than the total
> amount of claims held by secured creditors, the total of all allowed secured claims
> will equal, not exceed, the sales price, and the statute requires the price to be
> "greater than" the "value of all liens."

*In re PW, LLC (Clear Channel Outdoor Inc.)*, 391 B.R. 25, 40 (9th Cir. B.A.P. 2008).[2]

Accordingly, to the extent the Trustee believes that a sale will generate an amount less than or

equal to the aggregate value of all liens on the assets, Section 363(f)(3) cannot be used as a basis

to sell the property.

### B.    Section 363(f)(4) of the Bankruptcy Code.

Section 363(f)(4) of the Bankruptcy Code permits the Trustee to sell assets of the estate

free and clear of all security interests if the security interests are in a bona fide dispute.  The

Trustee cannot manufacture a bona fide dispute by burying his head in the sand regarding the

validity of the security interest.  Rather, the Trustee has the burden of proving that a bona fide

dispute exists.  *See Union Planters Bank v. Burns (In re Gaylord Grain LLC)*, 306 B.R. 624, 628

(8th Cir. B.A.P 2004) (holding that Trustee may "sell free and clear of the bank's liens if he can

show, pursuant to 11 U.S.C. § 544, an objective basis for avoiding the liens, and thus establish a

bona fide dispute for purposes of 11 U.S.C. § 363(f)(4)").  To determine whether a bona fide

---

[2] Although some cases—none in this jurisdiction—find that "value" as used in Section 363(f)(3) means economic value, rather than face value, these cases ignore that the statute explicitly requires that the property be sold at a price "***greater than***" the value of the liens.

dispute exists, courts "have held the parties to an evidentiary standard; evidence must be provided to show factual grounds that there is an 'objective basis' for the dispute. However, not any alleged dispute satisfies the subsection. It clearly entails some sort of meritorious, existing conflict." *In re Taylor*, 198 B.R. 142, 162 (Bankr. D.S.C. 1996) (citations omitted).

As discussed more fully *supra* at § I.A., there is no **bona fide** dispute over the security interest of AIP and DJP. Accordingly, the Trustee cannot use section 364(f)(4) as a basis to sell any encumbered assets of the Debtor.

### C.    Section 363(f)(5) of the Bankruptcy Code.

Finally, the Trustee seeks to sell the assets pursuant to Section 363(f)(5) of the Bankruptcy Code. That section allows a trustee to sell property of the estate free and clear of any interest in such property if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5). Accordingly, "Paragraph (5) requires that there be, or that there be the possibility of, some proceeding, either at law or at equity, in which the nondebtor could be forced to accept money in satisfaction of its interest." *Clear Channel*, 391 B.R. at 45. The Trustee's only basis for section 363(f)(5)'s appropriateness is that section 1129(b)(2)(A) provides such an equitable proceeding, even though this is a Chapter 7 case. *See* Bid Procedures Motion at ¶ 35. While no cases in this circuit directly address this point, the Ninth Circuit in *Clear Channel* focused on this issue and determined that the application of Section 1129(b)(2)(A) was not a "proceeding" under Section 363(f)(5), even in a Chapter 11 case. The Ninth Circuit stated:

> We thus hold that Congress did not intend under § 363(f)(5) that nonconsensual confirmation be a type of legal or equitable proceeding to which that paragraph refers. As a result, the availability of cramdown under § 1129(b)(2) is not a legal or equitable proceeding to which § 363(f)(5) is applicable.

*Clear Channel*, 391 B.R. at 46.  *See also In re Manning*, 37 B.R. 755, 759 (Bankr. D. Colo. 1984) ("the Trustee may not use § 363(f)(1) or § 363(f)(5) to sell the real property free and clear of the interests of other entities because applicable non-bankruptcy law does not permit such a sale."). Moreover, Section 363(f)(5) is inapplicable where the security interest is not satisfied in full. *See* 3 Collier on Bankruptcy ¶ 363.06[6] ("when sale is not in the ordinary course of business … [t]he secured party's interest in the proceeds does not serve as satisfaction of the security interest." *See also In re Takeout Taxi Holdings, Inc.,* 307 B.R. 525, 533-34 (Bankr. E.D. Va. 2004) (finding that if secured creditor could be forced to accept less than full payment, "such construction [of section 363(f)(5)] would consume subsections 2, 3 and 4.").

As there is no basis under Sections 363(f)(3), (f)(4) or (f)(5) of the Bankruptcy Code to sell the Debtor's assets free and clear of all liens, claims, and encumbrances, the Bid Procedures Motion must be denied and no sale of the assets should be allowed to go forward.

## IIII.    THE PROPOSED BID PROCEDURES DEMONSTRATE A LACK OF VALID EXERCISE OF BUSINESS JUDGMENT.

Where the bidding procedures are designed not to achieve a meaningful return to creditors, but instead only to guarantee that the administrative expenses of the Trustee and his other professionals will be covered, the Trustee's determination is not a valid exercise of business judgment.  Here, the Trustee has imposed requirements that do not add value—largely without any explanation in the Bid Procedures Motion.  Additionally, the Trustee has not obtained a valuation of the assets and, equally important, has not properly investigated the extent to which the Debtor's assets are encumbered.  With these added requirements and without this necessary information, the Court cannot conclude that the Trustee exercised any business

judgment with respect to a sale of the assets.

### A. The "Minimum Bid" Was Arbitrarily Set And Is Too Low To Provide Any Meaningful Return To Creditors.

#### 1. The Minimum Bid Does Not Exceed Administrative Costs.

The Trustee proposes a minimum bid of ***<u>$20,000</u>*** (the "Minimum Bid") for substantially all of the Debtor's assets. *See* Bid Procedures Motion at ¶ 11. Absent from the Bid Procedures Motion, however, is any description explaining how the Trustee calculated the Minimum Bid, how the Trustee concluded that the Minimum Bid was the appropriate floor for bidding, or how such Minimum Bid would ever provide a meaningful distribution to creditors. A quick analysis of administrative expenses shows that $20,000 is far too low to provide any return, let alone a meaningful one, to any prepetition creditor:

- **Professional Fees and Expenses:** The Trustee asserted that he was "in the hole" $10,000 as of March 14, 2011—less than 2 months after being approved as Chapter 11 Trustee—and has since retained additional counsel. By the proposed sale date of August 8, 2011, the Trustee and his counsel's professional fees and expenses will exceed the Minimum Bid, if they do not already.

- **Auctioneer Fees and Expenses:** The amount of auctioneer fees and expenses is not listed in the Bid Procedures Motion. The proposed auctioneer is a standing auctioneer in this District. Local Rule 6005-1 provides that standing auctioneers are entitled to both a commission of up to 15% plus reimbursement of expenses.

- **Tax Liabilities:** It is possible that the Debtor's estate will be liable for taxes resulting from the sale of substantially all of its assets. In addition to tax liability under U.S. law, because Hermitage Estates, Ltd. is a Bahamian entity, it is possible that sale of the Debtor's interest in Hermitage will also trigger tax liability under Bahamian law.

- **Marketing Budget:** The Trustee proposes to market the proposed auction, but does not specify how he intends to do so or the budget for such marketing efforts.

Taken together, these administrative expense costs will far exceed the Minimum Bid.

### 2.     The Trustee Has Not Valued Any of the Assets to be Sold.

Additionally, upon information and belief, the Trustee has not conducted a formal or informal appraisal on any of the assets being sold.  At the Conversion Hearing, the Trustee presented evidence that different appraisals valued Hermitage's real estate for as much as $168 million in 2004 and as little as $30 million in 2006.   The Trustee must explain how he set the reserve price at such a steep discount.

The Debtor's interest Hermitage is not the only asset proposed to be sold.  Despite the Trustee's statement that he may, in his discretion, sell the assets piecemeal, the Trustee gives no indication how the $20,000 breaks down between the Debtor's interest in Hermitage and the other assets he proposes to sell including:

- *The Line of Credit Agreement Dated October 10, 2006* between the Debtor, as lender, and Hermitage, as Borrower.  *See* Bid Procedures Motion at ¶ 6, C. Pursuant to this line of credit agreement, the Debtor is currently owed approximately $840,000 from Hermitage.  How much does the Trustee value this asset?  *See, e.g., In re Overland Park Merchandise Mart Partnership, L.P.*, 167 B.R. 647, 662 (Bankr. D. Kan. 1994) (rejecting minimum bid of $100,000 for share valued in cash at $118,970.25).

- *The Debtor's Rights Under a May 23, 2006 Settlement Agreement* between the Debtor, Hamby Limited, Barry Silverton, and Island Development Corp.  *See* Bid Procedures Motion at ¶ 6, B.  Under the terms of the settlement agreement, the Debtor is entitled to, among other things, three one-acre lots on Little Exuma island.  It is unclear what amount Trustee values this asset at, but it is clearly less than $20,000.

- *Various Litigation Claims*.  *See* Bid Procedures Motion at ¶ 6, D-G.  The Trustee has not attempted to determine the value of these assets, and it is not clear whether the Trustee understands the nature of the litigation claims he is attempting to sell.[3]

---

[3] The Trustee's description of the litigation claims is verbatim from the Debtor's and AIP's disclosure statement.  *Compare* Bid Procedures Motion at ¶ 6, D-H *with Proposed Disclosure Statement to Accompany Joint Plan of Reorganization Filed by Debtor and American Institutional Partners, LLC* at 18-19 [Docket No. 198] (the "Disclosure Statement").

While the Debtor previously acknowledged the "contingent and uncertain nature" of these assets (*see* Disclosure Statement at 19), the Trustee has set the Minimum Bid so low as to give these assets little or no value.  To the extent the Trustee believes these assets have no value, he should not pledge estate funds to sell them, but rather should abandon these assets.  *See Feinstein Family Partnership*, 247 B.R. at 507.

### 3.    The Trustee Has Not Determined The Validity Of The Secured Claims.

Moreover, the Trustee has not investigated the validity of the alleged secured liens on the property.  As discussed more fully **infra/supra** the Trustee's rationale for concluding that there is a bona fide dispute as to AIP's and DJP's security interests is both legally and factually inaccurate.  AIP has a perfected security interest, regardless of whether it filed a UCC-1 financing statement.  DJP has an executed security agreement together with a filed UCC-1 financing statement.  Accordingly, both AIP and DJP have provided sufficient evidence of valid security interests in the assets of the Debtor.  Given that these liens on the Debtor's assets exceed $2.6 million, even if the Minimum Bid exceeded administrative expenses costs, there would be no meaningful return to secured creditors, let alone unsecured creditors.

<p style="text-align:center">*                    *                    *</p>

In setting the Minimum Bid, it appears that the Trustee did not value the assets and did not value the security interests in those assets.  If he had, he would have seen that the Minimum Bid almost certainly does not exceed administrative costs and most definitely does not exceed the value AIP's or DJP's security interest.  Instead, it is plainly clear that the Minimum Bid was arbitrarily set.[4]  The arbitrary and capricious Minimum Bid cannot be approved by this Court.

---

[4]    As explained above, the Minimum Bid does not even cover professional fees and expenses.

**B.     A Break-up Fee is Unnecessary Where There Is No Stalking Horse.**

The Trustee proposes a break-up fee of 2 percent of the highest and best opening bid.  *See* Bid Procedures Motion at ¶ 12.  A break-up fee—especially where there is no proposed stalking horse—makes no sense.[5]  The Trustee cites no case, and AIP is aware of no case, where a break-up fee was approved in the absence of a stalking-horse or contracted bidder.  In fact, in the first case cited by the Trustee, *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995), the request for a break-up fee was rejected.  *Id.* at 106 (finding that costs of bidding should be borne by bidder, not estate's creditors).

Despite the fact that there is no proposed stalking horse bidder and, upon information and belief, no potential bidder is requesting a break-up fee, the Trustee argues that a break-up fee is necessary to induce parties to submit a substantial opening bid.  *See* Bid Procedures Motion at ¶ 27.  However, courts have expressly denied such arguments.  For example, the Third Circuit noted, "[a] break-up fee is not necessary to preserve the value of the estate when the bidder would have bid even without the break-up fee."  *In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) (internal quotation and citation omitted).[6]

Even at only 2 percent, a break-up fee serves only to chill bidding and take money from creditors of the estate.  The Trustee's motion provides no preconditions to the payment of a break-up fee, and leaves the determination of what is "the highest and best bid"—whatever

---

[5] As the Trustee himself admitted, "Agreements to provide breakup fees or reimbursement of fees and expenses are meant **to compensate the potential acquirer who serves as a catalyst or 'stalking horse'** which attracts more favorable offers."  *See* Bid Procedures Motion at ¶ 28 (citing *In re S.N.A. Nut Co.*, 186 B.R. 98, 101 (Bankr. N.D. Ill. 1995) (internal quotation omitted and emphasis added)).

[6] If the largest opening bid is topped, it follows that both bidders would have eventually bid at least up to the opening bid amount.

"best" means—in the hands of the Trustee.  This could lead to absurd results if, for example one opening bid topped another by just $1.[7]  That is not the purpose of a break-up fee and it should not be countenanced here.  If the Trustee wants to induce a substantial opening bid, he should substantially raise the Minimum Bid, not pledge assets of the estate when it is likely that, even after the sale, the estate will still be administratively insolvent.

### C.    An Auctioneer Is Unnecessary And, In Any Event, The Terms Of His Retention And Duties Are Unclear.

The Trustee has proposed Rob Olsen of Erkelens & Olson Auctioneers (the "Proposed Auctioneer") to conduct the auction.  *See* Bid Procedures Motion at ¶ 13.  The Trustee has not filed an application to employ Mr. Olsen or his firm and the Bid Procedures Motion does not spell out the terms of employment.  Accordingly, the following are unknown, among other things: (a) the terms of compensation; (b) how the Proposed Auctioneer was selected; and (c) whether the Proposed Auctioneer is disinterested.

First and foremost, the Trustee does not state why an auctioneer is necessary.  Although the Trustee is proposing a public auction, he is pre-screening prospective bidders.  Therefore, the number of bidders on the Debtor's assets will be limited.  There is no reason why the Trustee himself cannot conduct the auction.  Hiring an auctioneer is a waste of limited estate assets.

Second, the Proposed Auctioneer's compensation terms are unknown.  The Local Rules provide that Trustee is to negotiate the commission with the Proposed Auctioneer.  Will it be a flat percentage, or will it be on a sliding scale, depending on the outcome of the auction?  If a flat

---

[7] If, for example, two prospective purchasers offer $20,000 for the assets and prospective purchaser X offers $20,001, under the proposed bid procedures, prospective purchaser X would be entitled to a break-up fee if X's bid is topped even though the trustee's stated objective of inducing a substantial opening bid would not have been met.  Similarly, if there were two opening bids, one for $2,000,000 and one for $2,000,001, bidding the extra dollar would result in a $40,000 windfall.

percentage, regardless of outcome, why?  To engage an auctioneer without giving consideration

to his compensation shows a lack of business judgment.  The terms of the Proposed Auctioneer's

retention, must be disclosed.

Also unanswered in the Bid Procedures Motion are the Proposed Auctioneer's

qualifications for selling the assets the Trustee proposes to sell.  This auction relates to complex

intangible assets—assets in a Bahamian entity, rights under a line of credit payable to the debtor,

contingent rights to currently undeveloped building lots, and litigation claims.  It is unclear from

the Proposed Auctioneer's website whether it has any experience even remotely related to the

selling and/or marketing these types of assets.

Since no information on the Proposed Auctioneer has been presented to the Court or

other interested parties, it is impossible to determine whether the retention of the Proposed

Auctioneer is appropriate.  To the extent this Court believe that an auctioneer is appropriate, the

retention of the Proposed Auctioneer should be evaluated the under the same criteria as any other

professional seeking to be retained pursuant to §§ 327, 328 and 330 of the Bankruptcy Code.

Furthermore, the entirety of the Trustee's proposed marketing of the Assets is one vague

sentence:  "The Trustee and Auctioneer will use their best efforts to publicize the Auction and

the Bid Procedures."  Bid Procedures Motion at ¶ 25.  The concept of marketing an interest in a

Bahamian entity by way of an auctioneer is, plainly stated, untenable.  Typically, such an interest

would be shopped by an investment banker experienced in marketing and selling assets of this

type.  Here, the Trustee does not even propose a marketing plan, who the target audience is, or

whether any marketing materials will be provided.  Moreover, the Trustee does not specify how

he actually intends to publicize the auction, whether he will advertise in media outlets (and if so,

whether they will be local or national), and the proposed budget for such marketing efforts.

The Trustee also does not propose how potential purchasers are to conduct their due diligence on the property. It is unknown whether the Trustee and/or Proposed Auctioneer have prepared or will prepare a marketing book/bid package or data room. How is a potential purchaser supposed to examine the assets to determine their true value?[8] Without such procedures in place, the Trustee and Proposed Auctioneer are limiting the number of prospective purchasers who may bid on the Debtor's assets and are tremendously depressing the value of any bids. The Trustee must propose how he intends to market the Debtor's assets, including what information he is willing to provide potential bidders and whether a confidentiality agreement is necessary to view the information provided.

Finally, the Trustee has left too much to the discretion of the auctioneer with respect to overbidding procedures. The Trustee proposes that if there are multiple rounds of bidding, "the Auctioneer also may set opening bid amounts in each round of bidding *as the Auctioneer deems appropriate*." Bid Procedures Motion at ¶ 14 (emphasis added). Because the actual overbid amount is not listed for the Court to evaluate in the first instance and is instead left to the Proposed Auctioneer's sole discretion, this is unacceptable. "How much higher an overbid must be is a matter to be determined by the court. A minimum overbid that is too small unduly delays the proceedings. A minimum overbid that is too high, in contrast, discourages competition. The appropriate level for a minimum overbid is the minimum level that is high enough to move the procedure along toward achieving the highest bid." *In re Mama's Original Foods, Inc.*, 234 B.R.

---

[8] If the only bidders are those already familiar with the assets of the Debtor, it is yet another strong argument against the need for a break-up fee.

500, 505 (Bankr. C.D. Cal. 1999). It is inappropriate to delegate to the auctioneer this much discretion. The overbid amounts must be defined prior to any auction.

## V.    OTHER OBJECTIONS TO BID PROCEDURES.

### A.    Asset Purchase Agreement.

The Trustee proposes that a prospective bidder submit "an executed form of asset purchase agreement in form and substance acceptable to the Trustee." Bid Procedures Motion at ¶ 10, B. The Trustee gives no indication what form or substance he would find acceptable. More troubling however, is the potential chilling effect this requirement would place upon proposed bidders. The Minimum Bid is not proportional to the requirements for an asset purchase agreement and none should be required here.

### B.    Executory Contracts and Leases.

The Trustee proposes to file a cure notice listing the executory contracts and unexpired leases "that the Trustee, determines in the exercise of his business judgment, are necessary to maximize the value of any proposed transactions." Bid Procedures Motion at ¶ 18. The cure notice is to be filed on or before July 19, 2011. *Id.* Opening bids, which require the prospective purchaser to list which executory contracts and unexpired leases such purchaser wishes to assume and assign—including the cure amount—are due by June 28, 2011 and the auction itself is proposed to take place on July 15, 2011. This time frame is unworkable.

### C.    Sale of Assets in Whole or in Pieces.

The Trustee "reserves the right in the Bid Procedures to offer the Debtor's Assets for sale in other lots as the Trustee determines in the exercise of his business judgment if an alternative sale would result in the highest or otherwise best collective value for the Assets." Bid

Procedures Motion at ¶ 9.  The Trustee does not address whether he will entertain bids below $20,000 for any particular asset.  Moreover, as the Trustee has not valued any asset, in whole or in part, it is impossible for the Trustee to determine whether he is selling any particular asset of the estate for a fair price.

> **D.     Additional Assets to be Sold.**

After listing four groupings of certain litigation to be sold, the Trustee lists, separately, "Any and all other related claims and causes of action."  Bid Procedures at ¶ 6, H.  Additionally, the Trustee proposes to sell "[a]ny other assets of the Debtor which a bidder wishes to purchase and the Trustee in his discretion wishes to sell."  *Id.* at ¶ 6, I.  It is not clear what claims, if any, the Trustee is proposing to sell.  The Trustee must identify and disclose, for the benefit of all prospective purchasers, which additional assets of the Debtor exist and may be sold.  The Trustee has a duty to maximize value to the estate and, to the extent the Trustee or a prospective purchaser identifies or has identified assets of value, the Trustee is obligated to share that information.

WHEREFORE, AIP respectfully requests that the Bid Procedures Motion be denied.

> Respectfully submitted,
>
> **PEARSON LAW, P.C.**

Dated:  May 20, 2011
         Salt Lake City, Utah

> */s/ Jonathan R. Clark*
> Eric W. Pearson (7276)
> Jonathan R. Clark (12470)
> 10421 S. Jordan Gateway, Suite 600
> Salt Lake City, Utah 84095
> Telephone:  (801) 519-0300
> Facsimile:  (801) 519-0400
> Email:  ewp@pearsonfirm.com
> Email:  jrc@pearsonfirm.com

-and-

John D. McLaughlin, Jr. (admitted *pro hac vice*)
**CIARDI CIARDI & ASTIN**
919 N. Market Street, Suite 700
Wilmington, Delaware 19801
Telephone: (302) 658-1100
Facsimile: (302) 658-1300
Email: jmclaughlin@ciardilaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **OBJECTION OF AMERICAN INSTITUTIONAL PARTNERS, LLC TO TRUSTEE'S MOTION TO (A) APPROVE BID PROCEDURES AND BID PROTECTIONS FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) AUTHORIZE THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (C) PROHIBITING CREDIT  BIDS AT THE AUCTION; AND (D) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** was filed electronically via the ECF system, which system sent notice of such filing on May 20, 2011 to the following:

| | |
|---|---|
| Kenneth L. Cannon | kcannon@djplaw.com, khughes@djplaw.com |
| Anna W. Drake | annadrake@att.net |
| George B. Hofmann | gbh@pkhlawyers.com, dh@pkhlawyers.com |
| Michael R. Johnson | mjohnson@rqn.com, sglendening@rqn.com;docket@rqn.com |
| Michael D. Kendall | mdk@pkhlawyers.com |
| Peter J. Kuhn tr | Peter.J.Kuhn@usdoj.gov, |
| | James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov |
| David L. Miller tr | davidlmillerpc@msn.com, |
| | ut09@ecfcbis.com;dlm@trustesolutions.com |
| Douglas M. Monson | dmonson@rqn.com, tpahl@rqn.com;docket@rqn.com |
| Robert S. Prince | rprince@kmclaw.com, squilter@kmclaw.com |
| Shawn T. Richards | srichards@kmclaw.com |
| Steven C. Strong | scs@pkhlawyers.com |
| United States Trustee | USTPRegion19.SK.ECF@usdoj.gov |

I hereby certify that a true and correct copy of the foregoing **OBJECTION OF AMERICAN INSTITUTIONAL PARTNERS, LLC TO TRUSTEE'S MOTION TO (A) APPROVE BID PROCEDURES AND BID PROTECTIONS FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) AUTHORIZE THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (C) PROHIBITING CREDIT  BIDS AT THE AUCTION; AND (D) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**, filed electronically via the ECF system on May 20, 2011, was mailed first-class, postage prepaid on May 20, 2011 to the following:

Adam T. Mow
Babcock Scott & Babcock
505 East 200 South
Suite300
Salt Lake City, UT 84102

*/s/ Jonathan R. Clark*